IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRUCE SNYDER, II,**     Case 1:16 CV 774

    Plaintiff,

    v.     Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.     MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Bruce Snyder, II ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consent to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons stated below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB on July 8, 2013, alleging an onset date of July 1, 2009. (Tr. 146-52). Plaintiff's date last insured ("DLI") for DIB was March 31, 2014. (Tr. 78). Plaintiff's DIB claims were denied initially (Tr. 77) and upon reconsideration (Tr. 92). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 114-15) and following an administrative hearing, received an unfavorable decision on February 18, 2015 (Tr. 14-32). The Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the hearing decision the final decision of

the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on March 30, 2016. (Doc. 1).

## FACTUAL BACKGROUND[1]

*Personal Background and Testimony*

Plaintiff was born on August 14, 1979, and was 35 years old at the time of the ALJ hearing. (Tr. 41). He has a driver's license, a motorcycle license, and a commercial driver's license. (Tr. 42-43). Plaintiff obtained a high school diploma and has a two-year vocational degree in carpentry. (Tr. 43). At the time of the hearing, Plaintiff had been married for thirteen years to his wife with whom he has two children. (Tr. 42). He was a member of the Marine Corps from 1997-2001, serving as a combat engineer. (Tr. 44). Thereafter, Plaintiff worked unloading train cars and pouring concrete. (Tr. 46-48). At the same time, Plaintiff was self-employed as a carpenter for eight years. (Tr. 45).

At oral hearing before the ALJ, Plaintiff testified that he stopped working in 2009 when his depression began. (Tr. 49). Plaintiff said he quit working because he had difficulty leaving the house. *Id*. He was unable to concentrate and would become nervous, which would force him to go home. *Id.* Plaintiff also testified he had problems with his memory, concentration, and making decisions. (Tr. 60-61). Nonetheless, Plaintiff stated that his memory and concentration had improved since he began taking depression medication. *Id*. In addition to memory and concentration problems, Plaintiff also testified that he had problems relating to other people. (Tr.

---

1. Plaintiff only challenges the ALJ's assessment of Plaintiffs mental impairments. Therefore, any other claims are waived. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) (failure to raise a claim in merits brief constitutes waiver). Hence, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments about his mental impairments.

61). Plaintiff said he often did not know how to act in public and was often nervous when he left the house. (Tr. 61-62).

*Relevant Medical Evidence*

On March 9, 2011, Plaintiff underwent a mental health consultation with James A. Cousins, LSW, at the Veterans Affairs ("VA") Medical Center in Ashtabula, Ohio. (Tr. 507-09). Plaintiff complained of mounting depression and anxiety as a result of his health problems. (Tr. 508) Plaintiff admitted to feeling helpless, hopeless, discouraged, and angry. *Id.* Plaintiff also experienced interrupted sleep and an inability to concentrate. *Id*. Mr. Cousins's diagnostic impression was that Plaintiff suffered from depressive disorder not otherwise specified and he assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60.[2] (Tr. 514). Throughout Plaintiff's consultations at the VA Medical Center in Ashtabula, Ohio, he consistently had GAF scores between 54 and 60. (Tr. 378, 402, 417, 425, 444, 454, 467, 508, 644).

Thereafter, on March 11, 2011, Karen Woodard, a board certified mental health nurse practitioner with the VA, evaluated Plaintiff. (Tr. 503). Ms. Woodard observed that Plaintiff exhibited depressive symptoms, difficulty concentrating and focusing, anger, irritability, decreased motivation and interest, some anxiety, and some sleep disturbance. (Tr. 503). As a result, Ms. Woodard diagnosed Plaintiff with depression disorder not otherwise specified (depressive DO, NOS") and prescribed Venlafaxine. (Tr. 506). At a follow-up appointment on April 26, 2011, Ms.

---

2. A GAF is a "clinician's judgment of [an] individual's overall level of functioning." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 represents "moderate symptoms, [for example] flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning." *Id.* at 34. The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders recommends that "the GAF be dropped for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." *Diagnostic & Statistical Manual of Mental Disorders*, 16 (5th ed., Text Rev. 2013).

Woodard observed that Plaintiff was alert and oriented in all spheres and appeared less anxious and less depressed. (Tr. 494). Furthermore, his thoughts were logical, focused, relevant, and goal directed. *Id*. Plaintiff said his sleep was improving, his depression and irritability were under better control, and his concentration had improved. *Id*. Plaintiff agreed to monthly treatment with Ms. Woodard. (Tr. 497).

At his next visit on May 26, 2011, Plaintiff felt his depression and anxiety were improving. (Tr. 475). Plaintiff said "[e]verything is coming together, I can focus, I can get things done." *Id*. Plaintiff experienced a reduction in the intensity of his depression, anxiety, and irritability, as well as improvement in motivation, interest, energy levels, concentration, and focus. (Tr. 476). Thereafter, Plaintiff continued to exhibit progress with his depression and anxiety at his July and August evaluations. (Tr. 456, 463-64). In November 2011, Plaintiff reiterated that he was doing better. (Tr. 450).

In January of 2012, Plaintiff reported a stable energy level, improved concentration, and stable motivation and interest levels. (Tr. 445). Subsequently, in March 2012, Ms. Woodard observed that Plaintiff was depressed and anxious. (Tr. 441). However, by April 2012, his mental condition had improved again. (Tr. 433). Plaintiff's depression, motivation, and interest had bettered, and he was sleeping well. *Id*. This trend continued through October 2012. (Tr. 412-13, 421, 428-29). In November 2012, Plaintiff reported an increase in his depression and anxiety. (Tr. 403, 406). Nonetheless, by January 2013, Plaintiff's depression and anxiety lessened (Tr. 400), and this improvement continued through February 2013 (Tr. 391-394).

On March 28, 2013, Plaintiff reported more depression and anxiety (Tr. 380), but in April 2013, Plaintiff's depression had improved somewhat (Tr. 372), and in May 2013 he noted continued improvement in both depression and anxiety (Tr. 365-68). In July 2013, Plaintiff

4

expressed problems with his medication, and exhibited greater symptoms of anxiety and depression. (Tr. 357). These increased symptoms continued through November 2013. (Tr. 634, 814-16, 824-25). Plaintiff communicated more progress in December 2013 (Tr. 812) ("a little less anxious and depressed") and January 2014 (Tr. 803), reporting anxiety, but he felt less depressed (Tr. 803). Notwithstanding, on January 27, 2014, Plaintiff ran out of medication, and in a phone call to Ms. Woodard, seemed tearful. (Tr. 799-800). He reported depression and anxiety again in February of 2014, which continued through July 2014. (Tr. 775, 781, 785, 795, 797). In contrast, Plaintiff was "a little less" anxious and depressed in August 2014. (Tr. 768).

As part of Plaintiff's evaluation for his compensation and pension plan, VA psychologist Diane Johnson examined Plaintiff in November 2012. (Tr. 920-28). Dr. Johnson diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and anxiety disorder, NOS. (Tr. 921-22). Dr. Johnson opined that Plaintiff's depression and anxiety disorder began around December 2010. (Tr. 922). Plaintiff said he was depressed, but Dr. Johnson also noted that he was goal oriented and logical. (Tr. 923). Additionally, Plaintiff disclosed that he felt better than he had a year prior. *Id*.

Dr. Johnson issued an addendum to her initial report in May 2013 addressing Plaintiff's employability. (Tr. 928-29). She stated his depression and anxiety were moderate and could be considered collectively. (Tr. 928). Dr. Johnson observed that Plaintiff would have significant difficulties with interpersonal functioning and would have moderate difficulties adapting to stressful situations in a work or social setting. (Tr. 928). Moreover, she believed Plaintiff would have moderate difficulties establishing and maintaining effective work relationships; however, she discerned that his thinking process was logical and "would not affect his social or vocational functioning." *Id*. Dr. Johnson also noted Plaintiff's issues with concentration and motivation would

lead to periodic missed days from work and moderate to serious reductions in occupational productivity, reliability, efficiency, or work performance. *Id.*

Dr. Johnson stated that Plaintiff's ability to sustain concentration; interact and respond appropriately to coworkers, supervisors, and the general public; respond to changes in the work setting; and be flexible in the work place were all markedly impaired. *Id.* However, Dr. Johnson also stated that Plaintiff's ability to understand and follow instructions, perform simple tasks, and accept supervision and criticism would be moderately impaired. (Tr. 929). Furthermore, she opined that Plaintiff's short-term and long-term memory, as well as his impulse control in the workplace, were moderately impaired. *Id.*

*State Agency Reviewers*

After Plaintiff applied for DIB in July 2013, on September 3, 2013, state agency psychologist Leslie Rudy, Ph.D., conducted an assessment of Plaintiff's records. (Tr. 84-89). Although she felt increased stress was likely to increase his anxiety and depressive symptoms, she determined Plaintiff was capable of performing tasks without strict quotas or fast-paced demands. (Tr. 88). Dr. Rudy declared that Plaintiff was able to carry out detailed instructions, sustain an ordinary routine without special supervision, and work in coordination with or in proximity to others without being distracted. *Id.* She also iterated that Plaintiff was capable of making simple work-related decisions. *Id.* Dr. Rudy reported that Plaintiff's abilities to maintain concentration, perform activities within a schedule, maintain regular attendance, and be punctual would be moderately limited. *Id.* Therefore, she declared that Plaintiff would do best with static work duties. (Tr. 89). In addition, Plaintiff's file was reviewed by another state agency psychologist, Karen Steiger, Ph.D., on November 21, 2013; Dr. Steiger concurred with Dr. Rudy's assessment. (Tr. 98-103).

*VE Testimony & ALJ Decision*

In his written decision, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, depression, and anxiety. (Tr. 19). Notwithstanding, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20-21). During the administrative hearing, the ALJ asked the VE to consider a hypothetical person who was:

> [c]laimant's age, experience and education and the past jobs you've described. [A]ssume less than the light range of exertion with frequent climbing ramps and stairs, never climbing ropes, ladders, and scaffold, frequent balance, occasional stooping, occasional kneeling and crouching and crawling, and with the mental limitations of limited to performing simple, routine, and repetitive tasks, but no[t] on a production rate pace, and limited to simple work related decisions in terms of use of judgment and dealing with changes in the work setting.

(Tr. 68-69). The VE testified such an individual could not perform Plaintiff's past relevant work. (Tr. 69). On the other hand, the VE testified jobs existed in the national economy for such an individual. *Id*. The VE testified that at the light level there were jobs as a house or office cleaner, mail clerk, or sales attendant. (Tr. 69-70). In conjunction, the VE testified that at the sedentary level there were jobs available as an addresser, charge account clerk, and a food and beverage order clerk. (Tr. 71). The ALJ then asked the VE to modify the hypothetical to "add additional restrictions of no overhead reaching and no right hand grip strength beyond eight pounds". (Tr. 71). The VE responded that the same jobs previously listed would be available to such an individual. (Tr. 72).

The ALJ found that between July 1, 2009 and April 9, 2013, Plaintiff had the residual functional capacity to perform light work, except while Plaintiff could frequently climb ramps and stairs, he could never climb ropes, ladders, and scaffolds. (Tr. 22). Additionally, the ALJ concluded that Plaintiff could frequently balance and occasionally stoop, kneel, crouch, or crawl. *Id*.

7

Furthermore, the ALJ stated that Plaintiff was limited to performing simple, routine, and repetitive tasks but not at a production rate pace and was limited to simple work-related decisions in terms of use of judgment and dealing with changes in the work setting. *Id*.

The ALJ also held that from April 10, 2013 through the DLI, Plaintiff had the residual functional capacity to perform sedentary work. (Tr. 24). He could frequently climb ramps and stairs, but never climb ropes, ladders, scaffolds, or perform overhead reaching. *Id*. Plaintiff had no right hand grip strength beyond eight pounds, and was limited to performing simple, routine, and repetitive tasks but not at a production rate pace. *Id*. Plaintiff was limited to simple work-related decisions in terms of use of judgment and dealing with changes in the work setting. *Id*.

Accordingly, in conjunction with the VE testimony, the ALJ found that Plaintiff—from July 1, 2009 through April 9, 2013—could perform light occupations such as a housekeeping cleaner, mail clerk, and sales attendant. (Tr. 27). The ALJ concluded that Plaintiff—from April 10, 2013 through his date last insured—could perform sedentary occupations such as an addresser, charge account clerk, and food and beverage order clerk. *Id*. Thus, the ALJ held that Plaintiff was not under a disability at any time from the alleged onset date, July 1, 2009, through the date last insured, March 31, 2014. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Therefore, even if substantial evidence or a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for disability benefits is grounded upon the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe" which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

*Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp. 2d 822, 825 (N.D. Ohio 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v). Under this sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to

determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

In this case, Plaintiff disputes the ALJ's findings as to his residual functional capacity ("RFC"). (Doc. 14, at 13-14). Specifically, Plaintiff contends the ALJ unreasonably assigned little evidentiary weight to the opinion of nontreating VA psychologist Diane Johnson, and, therefore, the ALJ's RFC finding is not supported by substantial evidence. *Id.* at 11-13. Plaintiff asserts the ALJ's consideration of Dr. Johnson's psychological opinion did not satisfy the procedural requirements of 20 C.F.R. § 404.1527(c); analyzing at the factors, Plaintiff asserts that Dr. Johnson's opinion should be given more weight than the state psychologists' opinions. *Id.* at 12-13.

On the other hand, the Commissioner maintains that the ALJ reasonably discounted Dr. Johnson's opinion as inconsistent with the record. (Doc. 16, at 9). Furthermore, the Commissioner asserts the ALJ properly considered the opinions of the state agency psychologists in the context of the record as a whole. *Id.* at 8. Hence, the Commissioner reasons that based on the totality of the evidence in the record, the ALJ's findings as to Plaintiff's RFC have substantial support in the record. *Id.*

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 1545(a)(1). An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Moreover, when making a determination of a claimant's eligibility for DIB, "[t]he ALJ must consider all evidence in the record [], including all objective medical evidence, medical signs, and laboratory findings." *Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 722 (6th Cir. 2014); 20 C.F.R. § 404.1520(a)(3). The ALJ has the responsibility of weighing the evidence in the record and resolving conflicts within it. *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

ALJ's Evaluation of Opinion Evidence

Medical opinions are evaluated under the factors set forth in 20 C.F.R. § 404.1527(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Opinions from medical sources who have examined claimants are given more weight than sources who have not performed examinations ("nonexamining sources"). 20 C.F.R. § 404.1527(c)(1). Opinions from medical sources who regularly treat the claimants ("treating sources") are afforded more weight than those from sources who have examined the claimant but do not have an ongoing treatment relationship ("nontreating sources"). 20 C.F.R. § 404.1527(c)(2). In conjunction, the ALJ considers the supportability, consistency, and specialization of the physician. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(3)-(6). "In other words, 'the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Gayheart*, 710 F.3d at 375 (quoting Soc. Sec. Rul. No. 96—6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)).

Although examining medical source opinions generally receive more weight than non-examining sources, 20 C.F.R. § 404.1529(c)(1), "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. "Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). "Generally, the more consistent a medical opinion is with the record as

11

a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1529(c)(1); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 837 (6th Cir. 2016) (ALJ's reliance on a report that was not consistent with the record as a whole was misplaced).

There are also other factors that an ALJ may consider in evaluating the credibility of a claimant's assertions. For example, an ALJ can consider the claimant's response to medication and daily activities. *Walters*, 127 F.3d at 531 ("The regulations indicate that if disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken."); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (factors include daily activities). Although Plaintiff's response to medication and daily activities are not dispositive as to whether or not a claimant can actually work, *Cunningham v. Astrue*, 2008 WL 9463972, *14 (N.D. Ohio), they can either support or contradict his allegations. *Compare Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (claimant's daily activities supported allegations regarding pain), *with Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 544 (6th Cir. 2007) (claimant was able to perform a variety of daily activities which contradicted her subjective complaints).

*Opinion of Diane Johnson*

Dr. Johnson's report was compiled to assist the VA in processing Plaintiff's claim for disability benefits from the VA. (Tr. 920). Although Dr. Johnson noted that Plaintiff was depressed and had a sad affect, he reportedly felt better than he did a year prior. (Tr. 923). She also observed Plaintiff's thoughts were goal-directed and logical, he maintained good eye contact, and had a normal rate and tone of speech. *Id.* Dr. Johnson opined that Plaintiff exhibited "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood." (Tr. 924).

Dr. Johnson's initial opinion was augmented by an addendum dated May 31, 2013. (Tr. 928). She believed Plaintiff had "significant difficulties with interpersonal functioning." *Id.* For example, Dr. Johnson believed Plaintiff had moderate difficulties with social interaction and maintaining effective work relationships. *Id*. In addition, she noted Plaintiff had marked difficulties adapting to stressful situations and maintaining social relationships. *Id*. In contrast, Dr. Johnson observed that Plaintiff's thinking process was logical and would not hinder his social or vocational functioning. *Id.* Nevertheless, she believed that Plaintiff's difficulties with concentration, attention, distractibility, inner turmoil, fatigue, and motivation would lead to periodic missed days form work and moderate to serious reduction in occupational productivity. *Id.* She felt Plaintiff's ability to understand and follow instructions, and his short-term and long-term memory were moderately impaired. (Tr. 929). She noted the same of his abilities to accept supervision and criticism. *Id*. Furthermore, she found that his abilities to sustain concentration, interact, respond to changes in the work place, and be flexible in the workplace were markedly impaired. *Id.*

The ALJ concluded that Dr. Johnson's opinion had little evidentiary weight based on the totality of the evidence. (Tr. 26). The ALJ noted that "[d]uring all relevant times herein, the claimant was cooperative and pleasant . . . further, his memory and impulse control were intact." (Tr. 26). Moreover, in determining Plaintiff was not disabled, the ALJ considered his allegations concerning trouble with memory, concentrating, completing tasks, and following instructions (Tr. 22), as well as the clinical findings (Tr. 23-26). For example, the ALJ observed records reflected that Plaintiff was "sometimes anxious and depressed" (Tr. 23) (citing Tr. 333-572) (VA Clinic treatment records), but at other times his mood and affect were normal and appropriate, and he was routinely pleasant and cooperative (Tr. 23) (citing Tr. 254-94, 333-572). He noted Plaintiff was consistently alert and oriented, exhibiting logical, relevant, and goal directed thought

13

processes. (Tr. 23) (citing Tr. 254-94, 333-572). Additionally, the ALJ considered the fact that there was a gap in Plaintiff's mental health treatment. (Tr. 23-24).

In conjunction, the ALJ considered other factors in evaluating Plaintiff's claims, such as the effectiveness of Plaintiff's medication and his daily activities. Here, the ALJ noted that Plaintiff's anxiety and depression were controlled with medication. (Tr. 24) (citing Tr. 333-572). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (effectiveness of any medication is a factor). The ALJ commented that Plaintiff's daily activities included caring for his children, exercising, doing housework, grooming himself, cooking for himself and his family, riding his motorcycle, and working in his garage. (Tr. 20, 23, 24) (citing Tr. 63-65, 214-218, 421, 639-40, 792-93, 803, 805, 809, 811, 816, 817, 822, 868).

The medical evidence provides substantial support for the ALJ's conclusion to afford little weight to Dr. Johnson's opinion. Ms. Woodard's psychological evaluations of Plaintiff show that although Plaintiff sometimes reported he was depressed, at other times his mood and affect were normal and appropriate, he was routinely pleasant, cooperative, alert, oriented, with logical, relevant, and had goal oriented thought processes. (Tr. 357, 365-68, 375, 383, 394, 400, 406, 415, 421, 433-34, 478, 494, 503-05, 513-14, 629-30, 634-35, 641-42, 651, 693, 702, 768, 775, 781, 788, 795, 806, 812, 818-19, 821-23). The record also supports the ALJ's determination that Plaintiff's anxiety and depression were effectively controlled with medication. (Tr. 376, 412, 415, 481, 433, 435, 450, 476, 478, 494). Thus, contrary to Plaintiff's assertions, the ALJ's analysis of Dr. Johnson's opinion satisfies the procedural requirements of 20 C.F.R. § 404.1527(c); the ALJ considered the consistency of Dr. Johnson's opinion with the record. (Tr. 26). 20 C.F.R. § 404.1527(c)(4) (An ALJ may discount a medical source opinion if it is inconsistent with other substantial evidence). *See also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 428 (6th

Cir. 2015) ("The more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Upon a review of the entire record, the undersigned finds that the weight the ALJ afforded Dr. Johnson's opinion is supported by substantial evidence.

*State Psychologists' Opinions*

Relatedly, Plaintiff challenges the ALJ's evaluation of the opinions of the state agency psychologists. (Doc. 14, at 13). The ALJ found that the state agency psychologists' opinions were entitled to substantial weight. (Tr. 25). According to Plaintiff, Drs. Rudy and Steiger did not consider the entire record because they did not have Dr. Johnson's report. (Doc. 14, at 13). Hence, Plaintiff posits that the state agency psychologists' opinions are not supported by the record as a whole. *Id*.

The regulations require ALJs to "'consider findings of state agency medical and psychological consultants,' but ALJs 'are not bound by any findings made by state agency medical or psychological consultants.'" *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir. 2002) (quoting 20 C.F.R. § 404.1527(f)(2)(i)). Nonetheless, "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp. 2d 813, 823-24 (S.D. Ohio 2011). Furthermore, ALJs view state agency consultants as "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act." *Miller*, 811 F.3d at 834 (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(e)(2)(i). "[O]pinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F. Supp. 2d at 823-24.

State agency psychologist Leslie Rudy, Ph.D., reviewed Plaintiff's records on September 3, 2013. (Tr. 84-89). Dr. Rudy concluded that Plaintiff was capable of performing tasks without strict quotas or fast-paced demands. (Tr. 88). She found that that Plaintiff could carry out detailed instructions, sustain an ordinary routine without special supervision, and make simple work-related decision. *Id.* Dr. Rudy was also of the opinion that Plaintiff could work in coordination with or in proximity to others without being distracted by them. *Id*. As to Plaintiff's abilities to maintain concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual, Dr. Rudy stated that they were only moderately limited. *Id.* Dr. Karen Steiger, another state agency psychologist, agreed with Dr. Rudy's evaluation. (Tr. 98-103).

Plaintiff is correct to note that the state agency psychologists did not have the entire record before them; however, the ALJ did have the complete record before him which he discussed in his opinion. An ALJ may rely on the opinion of a state agency reviewer who did not review the entire record, so as long as the ALJ also considers the evidence post-dating the opinion. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *Ruby v. Colvin*, 2015 WL 1000672, *4 (S.D. Ohio) ("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion.").The ALJ reviewed the record as a whole, including Dr. Johnson's report and evidence submitted after the state agency psychologists' opinions. (Tr. 20-26). The ALJ utilized his discretion in choosing to afford significant weight to both state agency reviewers' opinions. 20 C.F.R. § 404.1527(d); *Douglas*, 831 F. Supp. 2d at 823-24; SSR 96—6p at *2-3. As a result, the undersigned finds that the foregoing constitutes substantial evidence.

The ALJ considered Dr. Johnson's opinion in light of the entire record and reasonably discounted it. (*supra*) (Tr. 19-26). In addition, the ALJ reasonably gave the state psychologists'

opinions significant weight. (Tr. 25). The ALJ did not commit an error by limiting the weight of Dr. Johnson's opinion and according more weight to the state agency psychologists. It is well within an ALJ's purview to evaluate the consistency of opinions with the record as a whole. *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Even if the Court were to consider the evidence as Plaintiff contends, substantial evidence exists to support the findings made by the ALJ and thus the Court will not overturn them. *Jones*, 336 F.3d at 477. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . this is so because there is a zone of choice within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

s/James R. Knepp, II
United States Magistrate Judge
